## IN THE COURT OF APPEALS OF IOWA

No. 16-2173
Filed March 8, 2017

**IN THE INTEREST OF E.L.,**
**Minor child,**

**S.L., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.


        The mother appeals from the order terminating her parental rights to her child, E.L., born in November 2012.  The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(g), (h), and (*l*) (2016).
**AFFIRMED**


        Pamela A. Wingert of Wingert Law Office, Spirit Lake, for appellant mother.

        Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

        Shannon L. Sandy of Sandy Law Firm, P.C., Spirit Lake, guardian ad litem for minor child.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals from the order terminating her parental rights to her child, E.L., born in November 2012. The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(g), (h), and (*l*) (2016). We affirm.

**I. Background Facts and Proceedings.**

E.L. was born in November 2012. E.L. was removed from the mother's care on two separate occasions due to her methamphetamine use. On July 23, 2014, E.L. was adjudicated a child in need of assistance, and on October 14, 2016, a termination hearing was held. On December 13, 2016, the court terminated the mother's parental rights and placed custody of E.L. with the father. E.L. has yet to experience permanency.

E.L.'s exposure to methamphetamines began in utero. At birth, E.L.'s mother was already involved with the Iowa Department of Human Services (DHS) from an August 2012 child-abuse investigation related to active methamphetamine use in the presence of the mother's other child, B.L., E.L.'s older sister.[1] Because the mother was actively participating in substance abuse treatment, E.L. was allowed to stay in the home. The mother and E.L.'s father were not married at the time, but they resided together. The mother complied with DHS services for the majority of 2013 until she relapsed on methamphetamine in fall 2013. The mother was required to leave the home and she participated in substance-abuse treatment for approximately six weeks.

---

[1] On September 1, 2016, the mother's parental rights to B.L. were terminated. E.L. and B.L. have different fathers.

E.L.'s father assumed physical care of both children, and the children participated in protective daycare. After returning home, the mother discontinued participation in DHS services.

In early 2014, a team meeting was held and DHS again provided services, including drug screening. On five separate occasions, DHS scheduled the mother and father for random drug testing. The father and mother failed to provide any samples. Ultimately, DHS attempted to conduct an in-home drug screen but the mother was unable to provide a sample, and the father was unavailable. After receiving multiple phone calls related to the father and mother's alleged methamphetamine use, DHS filed a petition for removal. On April 23, 2014, E.L. and B.L. were removed from the home and placed in family foster services based on the concern that both parents were actively using methamphetamine. On July 23, 2014, E.L. was adjudicated to be a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) (2014).

Following removal, DHS offered multiple services, including family foster care placement, reunification services, visitation services, substance abuse treatment, random drug testing, and family safety, risk and permanency (FSRP) services. In January 2015, the mother gave birth to another child, C.L.,[2] and in March 2015, the mother and father married. On April 21, 2015, custody of E.L. and B.L. was returned to the father and mother. For the next few months E.L.'s parents were making positive progress toward reunification. The mother was

---

[2] The mother's parental rights to C.L. were terminated on September 1, 2016. C.L. and E.L. have different fathers.

discharged from substance-abuse treatment, attending support meetings, working part-time, and regularly meeting with FSRP workers.

DHS, however, was suspicious of relapse and attempted to test both parties for illegal substances. Their attempts again failed. Over the summer and fall of 2015, DHS scheduled eleven separate drug screenings. The mother and father failed to provide a sample for any of them. On September 14, 2015, the parents admitted to relapsing multiple times, and on September 15, 2015, the court entered a removal order for E.L., C.L., and B.L. DHS again provided multiple services to help the father and mother recover.

During the period leading up to the termination hearing, DHS reports indicated the mother failed to comply with DHS services. She did not complete any drug tests, missed intake meetings for her substance-abuse treatment, and was consistently late for visitations. DHS reports indicated she was exposing the children to her new boyfriend, who had an extensive criminal history, and she was living with him in a one-bedroom apartment. Despite multiple attempts to complete a walk-through of the new residence, DHS was unable to gain access to verify the suitability of the living conditions.

On October 14, 2016, the termination hearing took place. As of the termination hearing date, the mother had not completed a drug test, although she admitted to marijuana use. The State presented evidence of the mother purchasing methamphetamine from a known dealer. On December 13, 2016, the

court issued an order terminating the mother's parental rights and placing E.L. in the custody of the father.[3]

The mother appeals the order terminating her parental rights.

## II. Standard of Review.

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Discussion.

We review termination orders using the following three-step analysis:

The first step is to determine whether any ground for termination under section 232.116(1) has been established. If we find that a ground for termination has been established, then we determine

---

[3] The district court discussed the rationale regarding placement of E.L. in the father's custody:

> [S]ubsequent to E.L. being removed from [the father's] care on September 15, 2015, [the father] has worked hard on his substance abuse recovery program and he has remained clean and sober. Additionally, [the father] has been cooperative [FSRP] Services, he attended all visitations with E.L., he completed a Love and Logic course, he has been involved with Parents Connect, and he has been active in the Parent Partner Program. [The father] is also active in his local church, and he has built a strong support group. Based upon [the father's] progress, it was anticipated that E.L.'s custody would be returned to the father by the end of October 2016.

whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any [permissive factors] in section 232.116(3) apply to preclude termination of parental rights.

*In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (citations omitted).

It is undisputed the State established grounds for termination under section 232.116(1)(g), (h), and (*l*). Instead, the mother claims the court erred in finding termination is in the best interest of E.L. She further claims the permissive factors related to placement with a relative preclude termination of her parental rights. We disagree.

**A. Best Interests**

Even when the statutory grounds for termination are satisfied, the juvenile court must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The juvenile court held the mother's failure to participate in services, her extensive history of substance abuse involving methamphetamine, and the need for E.L. to experience stability were reasons termination was in E.L.'s best interests. The mother argues termination is not in the best interest of the child because she would continue to support E.L. financially and emotionally. We disagree.

The mother's limited emotional support of E.L. is insufficient to overcome E.L.'s need for stability. Permanency and stability are essential elements to E.L.'s best interests. *See In re J.E.*, 726 N.W.2d at 802 (Cady, J., concurring

specially). The record does indicate the mother's strong bond and support of E.L. during the supervised visitations the mother decided to attend. As the juvenile court stated, "[The mother] has the ability to be a good parent when she is not using controlled substances." However, E.L. was exposed to methamphetamine in utero and the mother has a history of methamphetamine abuse. The mother refuses to submit to drug-testing services to demonstrate her sobriety, and DHS was unable to verify whether the mother has a residence free from illegal substances. Furthermore, E.L. has been in an unstable environment since she was adjudicated a child in need of assistance in July 2014. She was removed from the mother's care on two separate occasions and has lived in multiple foster homes. Psychological evaluations indicate E.L. suffers from fear of being alone, anxiety, irritability, obsession with having enough food, and occasional meltdowns induced by past traumatic experiences. The mother's continued destructive behavior is an indication that she is unable to provide E.L. with the permanency and stability that are essential to E.L.'s best interests. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)).

The mother's financial support of E.L. is also insufficient to overcome E.L.'s need for stability. Our primary interest is the long-range *physical, mental and emotional* condition of the child. *In re H.S.*, 805 N.W.2d 737, 746 (Iowa 2011). Ending any potential financial support obligation by a termination order is an inadequate reason to avoid termination. *Id.* at 748; *In re L.S.*, 483 N.W.2d

836, 840 (Iowa 1992) ("The fact that financial support, if any, by or through the parents is cut off is an inadequate reason to alter [termination]."). At the time of trial, E.L. was three years old and suffering from symptoms related to unspecified trauma and stressor related disorder. The detrimental effect of trauma on children is far-reaching, especially in the school setting. *See* Gene Griffin & Sarah Sallen, *Considering Child Trauma Issues in Juvenile Court Sentencing*, 34 Child. Legal Rts. J. 1, 10 (2014) ("Trauma often has a significant impact on a child's performance in school due to the fact that trauma robs the child of many of the skills necessary to be productive in a school setting. Child trauma results in neurological changes that may diminish memory, concentration, and language— 'abilities that children need to function well in school.'" (citations omitted)). Terminating the mother's parental rights is in E.L.'s best interests.

### B. Permissive Factors

Finally, we consider whether any of the permissive factors outweigh a need for termination. *See* Iowa Code § 232.116(3). The Iowa Code allows the court to decline to terminate if a relative has legal custody of the child. *Id.* § 232.116(3)(a). These factors are permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* The juvenile court considered whether the father's custody of E.L. should prevent termination but concluded termination is necessary. The mother argues it is in E.L.'s best interest to maintain contact with E.L.'s sister and the mother's extended family. The mother, however, has already caused harm to E.L. by the

mother's methamphetamine addiction and her inability to provide a stable environment. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d at 112. We agree with the juvenile court that the factors listed in section 232.116(3) should not preclude termination.

**AFFIRMED**